OPINION
The defendant/appellant, Donald K. York, appeals the judgment of the Seneca County Court of Common Pleas, finding him guilty of Aggravated Burglary with a fire arm specification, in violation of R.C. 2911.11(A)(2), and two counts of Attempted Aggravated Murder with a firearm specification, in violation of R.C. 2923.02(A) and R.C. 2903.01(A). Based on the following, we reverse the judgment of the trial court.
On Monday, August 28, 2000, the appellant broke into the home shared by his ex-wife, Mary Goodin, and her live-in boyfriend, Alan Beam. The appellant brandished a 22 caliber rifle at the couple. Ms. Goodin called the police as Mr. Beam struggled to subdue the appellant. During the struggle between the two men, the appellant pulled the trigger on the rifle, firing one shot.
The police arrived and arrested the appellant. He was indicted on one count of Aggravated Burglary and two counts of Attempted Aggravated Murder. Each count carried a fire arm specification. At trial, the appellant pled Not Guilty and Not Guilty by Reason of Insanity. The appellant was ultimately tried before a jury and found guilty on all charges. The trial court sentenced the appellant to nine years apiece for each of the three counts and to three years on the merged firearm specification, all of which were to be served consecutively for a total of thirty years in prison.
The appellant now appeals, asserting four assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I In an abuse of discretion, the trial court erred prejudicially and so reversibly when it overruled the defendant's objection to the trial court's decision to question witnesses at trial.
The appellant asserts that the trial court erred to his prejudice by inviting jurors to ask questions of the witnesses. For the following reasons, we agree with the appellant.
In the past, we have taken a dim view of juror questioning. We previously addressed this issue in State v. Cobb[1] wherein we held that the decision to allow jurors to question witnesses, while not encouraged, is within the sound discretion of the trial court.[2] We stated in Cobb that the appellant must show that such an error resulted in prejudice to him in order to overturn the trial court's decision to allow the jury to question witnesses.[3] The appellant asks us to go further than we did in Cobb and hold that inviting jurors to ask questions is so inherently prejudicial that it should not occur under any circumstances.
In the instant case, the trial court instituted numerous safeguards to help alleviate any prejudice that might arise from the jury's questions. First, the jurors submitted their questions in written form to the court. The attorneys were then allowed a side bar to review and object to any questions they believed to be inappropriate. The judge read to the witnesses only those questions that were determined to comport with the rules of evidence. The attorneys then were allowed a limited opportunity to ask follow-up questions. The trial court reminded the jurors more than once that if their questions were not asked it was because they were deemed inappropriate under the rules of evidence. A review of the juror questions that were asked in this case reveal no prejudice to the appellant. Thus, under the Cobb standard, we would find no error prejudicial to the appellant. We are not satisfied, however, that theCobb ruling sufficiently assuages the numerous problems with permitting jurors to question witnesses.
The Supreme Court of Ohio has not yet addressed the issue of juror questioning. Although the majority of Ohio appellate districts that have addressed this issue have applied the same standard as did this Court inCobb, most have also strongly discouraged the practice.[4] Presumably, courts have provided these cautionary notes because of the litany of problems this practice presents. The First District Court of Appeals recently held in State v. Gilden[5] that questioning by jurors is inherently prejudicial and should not occur even where the trial court takes precautions like those implemented in this case.[6] We agree with the First District and now hold that inviting questioning by jurors, under any circumstances, constitutes plain error.
In recent years, proponents of juror questioning have advanced it as a solution to jury inattentiveness and dissatisfaction with the trial process. While these are important issues, any ameliorating effect that juror questioning may provide is far outweighed by its negative effects. Although we have previously discussed many of our concerns regarding juror questioning in Cobb, a more detailed analysis is warranted here in order to explain why even the safeguards implemented by the trial court herein are insufficient.
One of the principal problems with juror questioning arises because of the complex rules of evidence — a system so thorny that is sometimes confuses trained attorneys. A juror's lack of understanding regarding the rules of evidence may lead him or her to ask an improper question.[7] When this happens, an attorney is left in an awkward situation. Understandably, an attorney may be reticent about objecting to a juror's question out of fear of biasing him or her, but failure to object means that the issue is not preserved for appeal.[8] This problem may be somewhat alleviated by requiring jurors to submit written questions and by allowing the attorneys to object to questions at side bar. However, this process allows the juror to speculate regarding which side objected, why, and whether they have something to hide.[9]
The safeguards themselves can create problems. A significant number of juror questions will slow the trial process and consume judicial resources. This result will be magnified where courts employ the long process of inviting written questions and allowing the attorneys to object at sidebar and to further examine witnesses. Although a trial judge may use his discretion to limit the number of questions asked by jurors, this will reduce any advantages of juror questioning.[10]
The most significant problem with juror questioning — one that cannot be cured through procedural safeguards — is that it distorts the juror's role as the impartial factfinder at trial.[11] As the First District points out, "[t]he jury's neutrality is essential to reaching the truth in an adversary trial."[12] When jurors are permitted to question witnesses, they take on the role of advocate, "actively seeking out facts instead of grappling with what the lawyers have provided."[13]
Once entangled in the fact-finding process, jurors may begin to draw conclusions prematurely, giving more weight to those facts which they themselves have rooted out rather than reserving judgment until the conclusion of all the evidence and weighing all the facts together.[14]
The right to a trial before an impartial jury of one's peers is a fundamental tenant of the judicial system. Although there is no way to ensure that jurors will be remain unbiased throughout a trial, the likelihood decreases the more that they participate in the advocacy process.[15]
Based on all of the foregoing, we hold that the trial court erred in inviting the jurors to ask questions of trial witnesses, notwithstanding the procedural safeguards that it employed. Accordingly, the appellant's first assignment of error is well-taken and is sustained. The appellant's other assignments of error are moot and we, therefore, decline to address them.[16]
Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
WALTERS, J., concurs.
BRYANT, J., Dissenting:
[1] (July 24, 2000), Seneca App. No. 13-2000-07, unreported.
[2] Id., quoting State v. Shepard (1955), 100 Ohio App. 345, 390,aff'd (1956) 165 Ohio St. 293. For a more thorough discussion of the problems regarding this issue, see Cobb, supra.
[3] Id., citing State v. Stanton (1968), 15 Ohio St.2d 215, paragraph two of the syllabus.
[4] State v. Wayt (1992), 83 Ohio App.3d 848, 857-858; State v.Sheppard (1955), 100 Ohio App. 345, 390, 60 O.O. 298, 322-323, affirmed on other grounds (1956), 165 Ohio St. 293; State v. Noser (Dec. 7, 2001), Lucas App. No. L-00-1154, unreported; State v. Cobb (July 24, 2000), Seneca App. No. 13-2000-07, unreported; Logan v. Quillen (Oct. 27, 1995), Hocking App. No. 94CA26, unreported; State v. Mascarella (July 6, 1995), Tuscarawas App. No. 94AP100075, unreported; State v. Sexton
(Nov. 24, 1982), Clark App. No. 1689, unreported; State v. Ernst (Oct. 29, 1982), Sandusky App. No. S-82-7, unreported. But, see, State v.Fisher (Dec. 20, 2001), Franklin App. No. 01AP-614, unreported ("To the extent that assuming an active role encourages a jury to stay alert and pay attention to the proceedings, allowing jurors to submit questions can be viewed as positive.").
[5] (2001), 144 Ohio App.3d 69.
[6] Id. at 75.
[7] Gilden, 144 Ohio App.3d at 72; Cobb, supra; Mascarella,supra.
[8] Jeffrey Reynolds Sylvester, Your Honor May I Ask a Question? TheInherent Dangers of Allowing Jurors to Questions Witnesses, 7 Cooley L. Rev. 213, 217; State v. Cobb, supra.
[9] Jeffrey S. Berkowitz, Note, Breaking the Silence: Should Jurors BeAllowed to Question Witnesses During Trial?, 44 Vanderbilt L. rev. 117, 143-44.
[10] Id. at 144.
[11] United States v. Johnson (C.A.8 1989), 892 F.2d 707, 713 (Lay, C.J., concurring).
[12] Gilden, 144 Ohio App.3d at 73.
[13] Id.
[14] Gilden, supra at 73; Cobb, supra; Sylvester, supra at 219-220.
[15] Berkowitz, supra, citing Johnson, 892 F.2d at 713 (Lay, C.J., concurring).
[16] See App.R. 12(A)(1)(c).